Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| *EX PARTE:*<br><br><br>GELVER ESPINOSA RODRÍGUEZ<br>ANA MARÍA HERNÁNDEZ ACOSTA<br><br><br><br>GELVER ESPINOSA RODRÍGUEZ<br>Peticionario | KLCE202400953 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.<br>K DI2014-0915<br><br>Sobre:<br>Divorcio<br>Consentimiento<br>Mutuo |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 17 de octubre de 2024.

Comparece el Sr. Gelver José Espinosa Rodríguez (señor Espinosa Rodríguez o peticionario), mediante recurso de *certiorari*, solicitando la revocación de una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI o foro recurrido), el 2 de agosto de 2024. Mediante su dictamen el foro recurrido determinó no permitir que el señor Espinosa Rodríguez efectuara el examen directo de la Trabajadora Social Rebeca Fuentes Ruiz (TS Fuentes Ruiz), **perito del Tribunal**, a través de preguntas sugestivas. Juzga el peticionario que, al así decidir, el TPI incidió. Tiene razón.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se revoca la resolución recurrida.

### I. Resumen del tracto procesal

La controversia ante nuestra consideración nace en el contexto de un pleito de divorcio, en el cual se dilucida la custodia del niño menor de edad (de trece años en la actualidad) procreado por la Sra. Ana María

NÚMERO IDENTIFICADOR

SEN2024_____

Hernández Acosta (señora Hernández Acosta o recurrida), y el peticionario. El establecimiento de dichas relaciones paterno-filiales es un asunto contencioso entre las partes. En atención a ello, el Tribunal ordenó a su Unidad Social de Relaciones de Familia que investigara y presentara un informe con recomendación de la forma y manera en que debían conducirse tales relaciones. De conformidad, en el 2021, la TS Fuentes Ruiz, rindió el Informe requerido.

Por estar el peticionario en desacuerdo con las recomendaciones del referido Informe, fueron celebradas varias vistas para considerar su impugnación ante la Hon. Arlene Sellés Guerrini. No obstante, a causa del retiro de la mencionada juez, el caso fue reasignado al Hon. Rafael E. Jiménez Rivera.

A raíz de la reasignación del caso, el foro recurrido ordenó la celebración de un nuevo juicio, y la preparación por la TS Fuentes Ruiz de un informe social actualizado.

Inconforme con el curso procesal elegido, el 30 de marzo de 2022, el señor Espinosa Rodríguez presentó una moción en oposición a la orden sobre inicio de un nuevo juicio, solicitando en su lugar que el TPI se diera a la tarea de escuchar las vistas ya celebradas, y culminara el juicio comenzado.

Sin embargo, el TPI rechazó la referida petición para continuar el juicio ya empezado, optando por dar comienzo a un nuevo juicio y proceso de evaluación social.

Transcurrido un año y medio desde que inició el proceso para determinar las relaciones paterno-filiales, el 21 de diciembre de 2023, se notificó la culminación de la nueva evaluación social requerida por el foro recurrido, rindiendo la TS del Tribunal el informe correspondiente. En atención a esto, el TPI ordenó a las partes que presentaran un *Informe de Conferencia con Antelación al Juicio* (Informe de Conferencia).

En cumplimiento, las partes presentaron el Informe de Conferencia. Del contenido de este informe surge que las partes no mostraban acuerdo alguno sobre cómo se debían conducir las relaciones paterno-filiales, y que el peticionario se disponía a impugnar las recomendaciones que surgían del nuevo Informe Social rendido por la TS del Tribunal asignada al caso.[1]

A tenor, el 21 de junio de 2024, el foro recurrido señaló una vista evidenciaria sobre impugnación de Informe Social. Llegado el día de la vista, luego de que el Tribunal decidiera no hacerle preguntas a su perito, la TS Fuentes Ruiz, sobre las recomendaciones contenidas en el Informe Social rendido, el peticionario comenzó el interrogatorio directo a esta haciéndole preguntas sugestivas. Ante ello, la recurrida objetó la formulación de tal tipo de preguntas en el directo conducido por el peticionario, por ser sugestivas. El TPI declaró *Ha Lugar* la objeción esgrimida por la recurrida.

Inconforme el peticionario con la determinación del Tribunal de no permitirle conducir el interrogatorio de la TS Fuentes Ruiz mediante preguntas sugestivas, arguyó en corte abierta que: (1) la TS Fuentes Ruiz no era su testigo, sino que era testigo-perito del Tribunal, por lo que procedía que se autorizara su interrogatorio mediante preguntas sugestivas; (2) que el TPI no había dispuesto sobre el orden de la prueba, ni iniciado los procedimientos mediante interrogatorio a su perito, la TS Fuentes Ruiz; y (3) que existía una incongruencia en el manejo de este tipo de interrogatorios de una sala de familia a otra.

Trabada la controversia sobre permitir o no las preguntas sugestivas del peticionario en el examen directo a la TS del Tribunal, el foro recurrido solicitó a las partes que presentaran sus posiciones por escrito.

De conformidad, el peticionario presentó la correspondiente *Moción en Cumplimiento de Orden*. En esta, reiteró los argumentos enumerados en el párrafo que precede, añadiendo que el TPI, por conducto de la Juez

---

[1] Anejo II del apéndice del recurso de *certiorari*, pág. 20.

Sellés Guerrini, ya había atendido el mismo asunto en el juicio anterior, declarando sin lugar la objeción de la recurrida, al entender que la impugnación del informe social no representaba un interrogatorio directo.

Evaluado el planteamiento del señor Espinosa Rodríguez, el TPI emitió la *Resolución* cuya revocación se nos solicita. Al reafirmarse en su determinación de no permitir las preguntas sugestivas a la TS del Tribunal por parte del peticionario en su examen directo, el foro recurrido fundamentó su determinación en que la Regla 607 de Evidencia, *infra,* dispone el orden y modo de presentación de prueba, a saber: interrogatorio directo, contrainterrogatorio, interrogatorio redirecto y recontrainterrogatorio.[2] A su vez, reconoció que, conforme a la Regla 709 de Evidencia, *infra,* cuando se trate de un perito llamado e interrogado por el Tribunal, las partes tendrán el mismo derecho a contrainterrogar como si se tratara de cualquier otro testigo.[3] Sin embargo, interpretó que, según su apreciación del precedente establecido en *Rentas Nieves v. Betancourt Figueroa,* 201 DPR 416, (2018), el Tribunal Supremo nada dispuso allí en torno a la naturaleza del testimonio de los trabajadores sociales del Tribunal, sino que se limitó a reconocer el derecho de las partes a recibir copia del informe social.[4]

En desacuerdo, el señor Espinosa Rodríguez acude ante nosotros, mediante recurso de *certiorari,* señalando la comisión del siguiente error por el TPI:

> **Primer Error**: Erró el Honorable Tribunal de Primera Instancia al determinar que el interrogatorio realizado a un Trabajador Social del Tribunal, siendo perito del TPI, está limitado a uno de naturaleza directa y no a uno de naturaleza sugestiva, a modo de contrainterrogatorio.

Ante lo cual, la Señora Hernández Acosta presentó *Oposición a Solicitud de Certiorari.*

---

[2] Anejo I del apéndice del recurso de *certiorari*, pág. 7.
[3] *Íd.*
[4] Anejo I del apéndice del recurso de *certiorari*, pág. 6.

**II. Exposición de Derecho**

a.

La Regla 709(a) de Evidencia, provee para que el Tribunal nombre a una persona perita **como testigo del Tribunal**. 32 LPRA Ap. VI, R. 709(a) (Énfasis provisto). Indica el mismo inciso (a) de la Regla aludida que una persona perita nombrada por el Tribunal, "deberá notificar a las partes sus hallazgos, si alguno; podrá ser depuesta por cualquier parte y podrá ser citada para testificar, por el Tribunal o cualquiera de las partes". *Íd.* Culmina el referido inciso disponiendo que "[l]a persona nombrada perita **estará sujeta a contrainterrogatorio por cualquiera de las partes, incluyendo la que le citó**". *Íd.* (Énfasis provisto).

En *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416 (2018), nuestro Tribunal Supremo se expresó sobre la antedicha Regla, en el contexto de un caso de custodia, cuya controversia principal giraba alrededor del descubrimiento por las partes del informe social rendido por las trabajadoras sociales del propio tribunal. En esa ocasión, el Alto Foro determinó que las partes poseían, por imperativo constitucional, derecho a no solo ser notificadas de los hallazgos contenidos en los referidos informes periciales, sino también a contrainterrogar a los trabajadores sociales con relación a sus hallazgos. *Íd.* en la pág. 430. Como parte de su análisis, el Alto Foro dispuso que, **"[n]o cabe duda de que el cuerpo de trabajadores sociales** de la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Rama Judicial **son peritos al servicio del Tribunal**", y que, por tal razón, **están claramente sujetos a la Regla 709 de Evidencia**, *Íd.* en la pág. 427. (Énfasis provisto).

b.

Por otra parte, la Regla 607 de Evidencia establece lo relativo al orden y modo de un interrogatorio y presentación de la prueba. 32 LPRA

Ap. VI, R. 607. La misma dispone que el interrogatorio de los testigos se efectuará en el siguiente orden:

(1) Interrogatorio directo: Primer examen de una persona testigo sobre un asunto no comprendido dentro del alcance de un interrogatorio previo de esa persona testigo.

(2) Contrainterrogatorio: Primer examen de una persona testigo por una parte diferente a la que efectuó el interrogatorio directo. El contrainterrogatorio se limitará a la materia objeto del interrogatorio directo y a cuestiones que afecten la credibilidad de testigos. El Tribunal puede, sin embargo, en el ejercicio de su discreción, permitir preguntas sobre otras materias como si fuera un interrogatorio directo.

(3) Interrogatorio redirecto: Examen de una persona testigo que, con posterioridad a su contrainterrogatorio, le hace la parte que le sometió al interrogatorio directo. El interrogatorio redirecto se limitará a la materia objeto del contrainterrogatorio.

(4) Recontrainterrogatorio: Examen de una persona testigo que, con posterioridad al interrogatorio redirecto de dicha testigo, le hace la parte que le sometió al contrainterrogatorio. El recontrainterrogatorio se limitará a la materia objeto del interrogatorio redirecto. *Íd.*

Como regla general, "[n]o se podrá hacer una pregunta sugestiva a una persona testigo durante el interrogatorio directo o el redirecto", pues estas preguntas le "sugiere[n] al testigo la contestación que desea la parte que le interroga". Regla 607 (D) de Evidencia, 32 LPRA Ap. VI, R. 607(D). Sin embargo, **esta prohibición no es absoluta**, pues nuestro derecho probatorio reconoce excepciones a la referida regla general. En específico, la Regla 607(D) establece circunstancias en las que se admiten las preguntas sugestivas a un testigo en el interrogatorio directo, como las siguientes: ante un testigo hostil, cuando se trate de una parte adversa que testifica o de un testigo identificado con una parte adversa, ante personas que sean mentalmente deficientes o tengan dificultades en la expresión, o que esté renuente a expresarse libremente. *Íd.*

Según nos ilustra el tratadista Ernesto L. Chiesa Aponte en sus comentarios a la Regla 607 de Evidencia, la lista de excepciones que esta contiene, "no es taxativa y el tribunal tiene discreción para permitir preguntas sugestivas en el examen directo o re-directo, si bajo las

circunstancias no está presente el peligro que se quiere evitar con la prohibición". E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1era ed., Ediciones SITUM, 2016, pág. 193. Añade el tratadista, que "[m]uchos tribunales permiten que en el examen directo del perito se hagan preguntas sugestivas, bajo la teoría de que el perito no se prestará a ser guiado por el abogado que le pregunta". *Íd.*

El mismo tratadista discute este tema en su *Tratado de Derecho Probatorio*, indicando que, **si una parte llama <u>a un perito del tribunal</u>** a declarar, **"[n]o tiene sentido aplicar aquí la regla que prohíbe preguntas sugestivas en examen directo, <u>pues no se trata realmente de un testigo de parte o identificado con una parte</u>"**. (Énfasis y subrayado provistos). E. L. Chiesa Aponte, *Tratado de Derecho Probatorio*, Publicaciones JTS, 1998, pág. 590 (1998).

La apreciación del tratadista que resaltamos en el párrafo que precede, a su vez, resulta cónsona con el comentario a la Regla 607, *supra,* hecho por el *Comité Asesor Permanente de Reglas de Evidencia*, el cual aclaró que **"[s]e permiten las preguntas sugestivas en el interrogatorio directo en ciertas circunstancias**: testigo hostil, parte adversa o identificado con parte adversa, ... **peritos**, entre otros." Comité Asesor Permanente de Reglas de Evidencia, *Informe de las Reglas de Derecho Probatorio*, 2007, pág. 337.

**III. Aplicación del Derecho a los hechos**

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos permite, por vía de excepción, intervenir con una resolución interlocutoria emitida por el foro *a quo* cuando, en lo pertinente, se recurra sobre decisiones de casos de relaciones de familia, y cuando revistan interés público.

Claramente nos encontramos ante una de las excepciones previstas en la citada regla procesal que nos habilita para intervenir con el dictamen

interlocutorio recurrido, en tanto ha sido planteada una controversia en un caso de relaciones de familia, que además reviste alto interés público, al tratarse del bienestar de un menor de edad mediante el establecimiento de las relaciones paterno-filiales.

b.

Comenzamos zanjando que la TS Fuentes Ruiz no es una testigo identificada con una parte en este pleito, pues, como expusimos en la discusión de *Rentas Nieves v. Betancourt Figueroa*, supra, los trabajadores sociales empleados por el Poder Judicial **son peritos del Tribunal**. También resulta necesario resaltar la distinción entre llamar o citar a un testigo, y examinar a un testigo. La primera de dichas situaciones presupone que el testigo está identificado con una parte, pues es ésta quien lo trae al pleito y está, en teoría, en posición de prepararlo para el interrogatorio, y por ello, de ordinario, no se permite su interrogatorio a través de preguntas sugestivas. Por otro lado, el examinar a un testigo meramente se refiere al proceso de interrogación de una persona, mecanismo mediante el cual se presenta la prueba.[5]

En la exposición de derecho manifestamos que la determinación sobre permitir o no preguntas sugestivas a un testigo, **no** se agota con el solo etiquetaje de que se trate del interrogatorio directo, pues, aunque tal es la regla general, lo cierto es que las propias Reglas de Evidencia contemplan situaciones en que procedería tal tipo de preguntas (sugestivas), a pesar de que se trate del examen directo. Regla 607(D) de Evidencia, *supra*. Advierte sobre este asunto el profesor Chiesa que *la razón de ser de la prohibición de preguntas sugestivas en el examen directo*

---

[5] Juzgamos que sirve para ilustrar lo afirmado tomar como referencia la Regla 614 de las Reglas Federales de Evidencia, al disponer sobre el mismo asunto lo siguiente:
Court's Calling or Examining a Witness
(a) CALLING. The court may call a witness on its own or at a party's request. Each party is entitled to cross-examine the witness.
(b) EXAMINING. The court may examine a witness regardless of who calls the witness. FRE, R. 614.

*supone que el testigo está identificado con la parte que pregunta.* E. L. Chiesa, *supra,* pág. 376 (Énfasis provisto).

En el caso ante nuestra consideración **no** se puede afirmar que la TS del Tribunal, Fuentes Ruiz, se encuentre identificada de manera alguna con el peticionario. Muy al contrario de ello, el propósito expreso del peticionario para interrogar a la referida TS durante el juicio ha sido el de impugnar las recomendaciones que ésta plasmó en su Informe Social, sobre cómo deberían conducirse las relaciones paterno-filiales, lo que la coloca en las antípodas de una testigo que se identifique con el interés del primero.

Valga aquí resaltar la expresión del profesor Chiesa al advertir que, **si una parte llama a un perito del tribunal** a declarar, *[n]o tiene sentido aplicar aquí la regla que prohíbe preguntas sugestivas en examen directo,* ***pues no se trata realmente de un testigo de parte o identificado con una parte.***[6] El objetivo de la prohibición de las preguntas sugestivas en el interrogatorio directo es evitar que se le sugiera a un testigo la contestación deseada por la parte, no obstante, **ese miedo se disipa en el contexto de un testimonio pericial ya que el perito no se presta para ser guiado por quien lo interroga**. *Íd.* Precisamente, la importancia de la designación de un perito por el Tribunal radica en que éste no estará identificado con las partes, lo que evita testimonios periciales parcializados en favor de la parte que lo contrate[7], y de aquí que no presente problemas reales que las partes interroguen a tal testigo mediante preguntas sugestivas.

En definitiva, no encontramos argumentos en derecho que sirvan para sostener la limitación impuesta por el TPI a que el peticionario condujera el examen directo de la TS Fuentes Ruiz mediante preguntas abiertas. A *contrario sensu,* resolvemos que procede permitir que el señor Espinosa Rodríguez efectúe el interrogatorio directo de la perito del

---

[6] E. L. Chiesa Aponte, *Tratado de Derecho Probatorio*, Publicaciones JTS, 1998, pág. 590.
[7] E. L. Chiesa, *supra*, pág. 585.

Tribunal, testigo no identificada con el primero, utilizando preguntas sugestivas.

## IV. Parte dispositiva

Por los fundamentos expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida. En atención a ello, el Tribunal de Primera Instancia permitirá el interrogatorio de la TS Fuentes Ruiz por el peticionario, a través de preguntas sugestivas.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones